MITCHELL *v.* THE HOTEL BERRY CO.

260

(Decided October 30, 1929.)

*Messrs. Woolley & Rowland,* for plaintiff in error.
*Mr. A. B. Wells,* for defendant in error.

MAUCK, J. Plaintiff in error filed her action in the common pleas, alleging that on and prior to October 22, 1928, she was a guest of the Hotel Berry in the city of Athens, which was a hotel or public house owned and operated by the defendant company, and that she was paying a stipulated rental for the room occupied by her. She pleaded that shortly after the midnight of October 21, 1928, the hotel building was on fire; that the plaintiff, when

she learned of the fire, believing herself in great danger, and that her only means of escape from the peril was through a window in said building, did drop from that window and in alighting sustained severe injury, for which she sought damages. She said that the defendant was negligent, in that the hotel was more than two stories high, and she was occupying a room on the third story of said building, and defendant did not provide convenient exits from the different upper stories and did not provide a net or other life-saving device of that kind. She further charges that the defendant carelessly and negligently permitted the fire to start in the lower part of the building. Another charge of negligence is that the defendant's agents and employees carelessly failed to give plaintiff any warning of the fire, or any assistance in escaping from the building. It is further charged that there was no light or other signal which could be seen by plaintiff in any corridor or hallway on said floor leading to any fire escape.

The defendant denies the averments of the petition generally and pleads that the plaintiff was informed of a convenient exit from said building, and that plaintiff, in disregard of a safe and proper means of egress provided by the defendant, carelessly leaped from the window and sustained the injuries complained of. Upon the issues so joined the case went to trial. At the conclusion of the plaintiff's testimony the court sustained a motion for a directed verdict in favor of the defendant. To the judgment that followed error is prosecuted to this court.

Miss Mitchell, the plaintiff, testifies that she was

occupying room 120, that the room became uncomfortably hot, that she opened the door and smelled smoke and found the hall to be full of smoke. The lights were then on and she realized that the hotel was on fire. She could see no red light indicating the direction of a fire escape. She then returned from the hall to her room, dressed partially, and went out into the hall again for the purpose of attempting to get to the front of the building, she being then in the rear of the building. The lights had gone out while she was getting her clothing. Thereupon the occupants of a nearby room called her, and the lady occupant of that room jumped from the window to an adjoining roof. Thereupon the plaintiff attempted to drop to the adjoining roof, but missed the same, and fell to the cement pavement below.

The plaintiff sought to make a case of negligence *per se* against the defendant by showing the violation of certain statutes passed for the regulation of hotels, and also relied somewhat indefinitely upon a showing of common-law negligence.

In considering the application of some of the statutes relied upon we find that the building in question was a three-story building, and that the presence of a basement under a part thereof did not make the structure one of four stories, nor create a situation where the jury might determine that there were four stories. Section 4658, General Code, requires a rope or life line in each room above the second story of an inn having more than three stories. The plaintiff was occupying a room in the second story and clearly could not have benefited by a compliance with the statute requiring life lines on the floor above. Section 4659, General Code, requires

lifesaving nets only if the building is more than three stories high and consequently does not apply to this situation.

Section 1028-1, General Code, provides that "owners of buildings wherein shops or factories are operated shall make suitable provisions for the safe and speedy egress therefrom in case of fire or other disaster of persons employed in such shop or factory or residing therein or who may be invited any time thereinto." And among other specific provisions therein is this found in paragraph 4: "They shall provide signs over all doors as exits and over all openings or passageways leading to exits which shall be clearly marked with the word 'EXIT' in plain block letters not less than six inches high; such signs shall be so placed that they may be seen from any part of the room, if possible."

The record shows that the provisions of this paragraph of the statute were not complied with, in that there were no exit signs of the required size anywhere, and it only remains to be determined whether the statute applies to hotels when shops and factories alone are mentioned.

Section 1002, General Code, provides that the term "'shops and factories' as used in this chapter shall include" hotels. When what is now Section 1002, General Code, was first enacted, 90 Ohio Laws, 190, it provided that hotels should be included among shops and factories only so far as what are now Sections 996, 997, 998 and 999 are concerned. When the statutes were recodified, however, this definition was extended from the sections mentioned to all sections in Chapter 12, Division II, of Title III of the General Code. When the Legislature subsequently

enacted 1028-1, and gave that section a number that placed it in Chapter 12, it expressed the intent to extend the definition of Section 1002 over the new statute. It accordingly follows that Section 1028-1, General Code, applies by direct legislative action to hotels. That no narrow construction was designed for this section is apparent from the language above quoted. The language recites that it is for the protection, not only of employees, but for invitees and for persons "residing therein." People do not reside in shops or factories, as those terms are generally used, and the term was employed to render it clear that tenement and "department" houses were likewise covered by the statute. This expression would consequently be meaningless unless the Legislature deemed Sections 1002 and 1028-1 *in pari materia,* and that the latter section read in conjunction with the former gave to the term "shops and factories" the inclusive scope of the former section. When, therefore, in the case at bar it was shown that the defendant had not complied with the statute by having exit lights of the kind and character prescribed by Section 1028-1, a case of negligence was made.

There develops at this point a variance between the petition and proof. The petition averred that the lights in the hotel were extinguished when the plaintiff learned of the fire, and it might be argued from this that, had the exits been marked as the statute prescribed, the plaintiff could not have seen them. The answer to this is that she might have familiarized herself with the exits prior to that night, as she had an opportunity to do, if they had been properly marked. The plaintiff testified, how-

ever, that when she first went out into the hall the lights were burning, and the petition could have been and ought to have been amended to conform to the evidence. To take the case from the jury on this showing of negligence was error.

The only specifications of common-law negligence in the petition related to the origin of the fire and the failure to warn the plaintiff of the fire. There is no evidence that the fire started from any carelessness of the defendant, and authority does not justify the invocation of the doctrine of *res ipsa loquitur.* The plaintiff hardly made a case to go to the jury on the failure to warn her of the danger after the fire started. The element of time enters into the question, and the record does not disclose whether any time elapsed after the discovery of the fire by the defendant and its discovery by the plaintiff. The defendant was not bound to warn the plaintiff of the fire until it knew about the fire. With this is involved the question of whether there were sufficient watchmen or other servants on duty to have earlier ascertained the existence of the fire. This latter question is not raised by the pleadings, and the whole case was too nebulous to have gone to the jury on that ground.

As the conclusions of this court require a retrial of the case, it is perhaps proper to observe that, although it be shown that the defendant had all the exits required by Section 1028-1, and therefore was not guilty of negligence *per se* in that respect, it is not acquitted of a charge of common-law negligence by proof of its compliance with the statutes. Section 4658, General Code, provides that in a hotel of the height of the defendant's house the owner shall pro-

vide convenient exits from the different upper stories, easily accessible in case of fire. This requirement of the statute is no more definite than the common-law duty of the innkeeper. Paragraph 1 of Section 1028-1 prescribes certain exits as absolutely required. This latter section, however, does not fix the number or kind of exits. It only fixes a minimum below which negligence *per se* arises. The particular building and its use may require more than this minimum to reach the requirements of Section 4658 and the requirements of the common law. What, if anything, due care requires beyond the statutory minimum is a question of fact, and whether negligence in the number and place of the means of egress exists depends upon the size of the building, the number and situation of the halls, the number of people to be accommodated, the location of the guestrooms, together with other possible factors that might show the facilities required by Section 1028-1, General Code, to be inadequate in a given case.

The trial court erred in directing a verdict, and the case is reversed and remanded for new trial.

*Judgment reversed and cause remanded.*

MIDDLETON, P. J., concurs.
BLOSSER, J., not participating.